IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

CHRISTINE DARBY,

    Plaintiff,

v.

    No.: _____

THE VANDERBILT UNIVERISTY,    JURY DEMANDED

    Defendant.

## COMPLAINT

PLAINTIFF, Christine Darby, brings this action against the Defendant. She shows:

### I. PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. and Tennessee Disability Act (Tenn. Code Ann. §§8-5-103-104).

2. The Court has subject matter jurisdiction pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has personal jurisdiction over the Plaintiff, who is a resident of Davidson County, Tennessee and the Defendant, who does business in the State of Tennessee. The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3. Venue also lies in this Middle District of Tennessee, pursuant to 28 U.S.C. § 1391, because the Defendant does business in this district, and a substantial part of the alleged events or omissions giving rise to this action occurred in this district.

4. Plaintiff is a former employee of The Vanderbilt University's Medical Center (hereinafter

"Defendant"). During her employment with Defendant, Plaintiff was a covered employee under the FLSA and the Tennessee Disability Act (TDA).

5. The Defendant is a business engaged in commercial enterprise. It is a covered employer under the FLSA and the TDA.

## II. TENNESSEE DISABILITY ACT FACTUAL BASES FOR SUIT

6. Plaintiff, an LPN, is an individual whom Defendant regarded as having a "disability."

7. Plaintiff suffered the actual impairment of two aneurysms, leading to Defendant questioning Plaintiff about her mental health abilities. More specifically, Defendant required Plaintiff take off work for her health condition; required her to undergo a neuropsychological evaluation in December of 2010 (which she passed); and, thereafter, used its assistant manager of neuropsychology to question Plaintiff about whether various performance and "documentation" issues were owing to her mental health condition (though they were not). Thus, Defendant regarded Plaintiff as substantially limited in mental activities including, inter alia, perception, memory, communication, ordering of events, etc., and working a class of any job involving a clinical setting.

8. Plaintiff, a nurse, was assigned to work with two neurosurgeons, Dr. Peter Konrad and Dr. Joseph Neimat, along with a Family Nurse Practitioner.

9. In truth and fact, Defendant woefully understaffed Plaintiff's department, despite having meetings with Drs. Konrad and Neimat who indicated this gross understaffing and the resulting patient risks being accepted due to understaffing. Defendant recognized the staffing issues and resulting risks but still claimed that "budget issues" prevented the appropriate staffing levels from being implemented.

10. Plaintiff faced a Catch 22 (no win situation). She lacked the necessary assistance for her position. If she worked and reported overtime, she would be disciplined. But when she tried to perform multiple persons workload by herself, she would receive discipline for various documentation errors which, Defendant ascribed to her mental health.

11. Defendant chose to ascribe the documentation errors to beliefs about Plaintiff's mental health condition, not to its own business failures in maintaining appropriate and safe work levels for staff.

12. Defendant chose to disbelieve the two neurosurgeons most knowledgeable about the work and staffing levels necessary for safe patient care.

13. Defendant removed Plaintiff from her active position of LPN in April of 2012, stating that she must apply for positions "not in a clinical setting."

14. On or about May 25, 2012, having not selected Plaintiff for any other role for which she applied, Defendant terminated Plaintiff's employment completely.

15. Rather than acknowledging managerial issues of placing "budgets" above patient safety, Defendant terminated Plaintiff for "poor performance and documentation errors."

16. On May 29, 2012, Dr. Neimat confirmed to Plaintiff in an email that Defendant's management failures created the conditions, not Plaintiff's performance (or perceived performance owing to a "disability"):

> Thanks for your email. I continue to be appalled at the way you were treated by Vanderbilt. We had been pressing for months/years to get you some help. Its [sic] amazing to me that you were unable to do that. I have no doubt that whoever fills this position will find the same complications and challenges are simply too much for 1 person.
>
> Pete and I feel very much the same way about working with you. We loved having you as part of the team. You provided something very special to our patients that cannot be

3

> replaced. We miss you every day.
>
> Please do keep in touch. Let me know how things work out and if I can send another letter or call someone as a reference, just let me know. Hope to see you soon.
>
> Joseph

17. The email from Dr. Neimat reveals that Defendant had denied appropriate staffing and help to Plaintiff for "months/years,*"* and had done so knowingly, not out of ignorance.

18. The termination of Plaintiff, on account of her perceived disability, caused her anguish, embarrassment, humiliation, and cost her pay and benefits (back pay and benefits). She seeks these damages along with appropriate reinstatement and/or front pay.

### III. FLSA FACTUAL BASES FOR SUIT

19. Defendant employed Plaintiff as a nurse for over nine (9) years, ending on or about May of 2012.

20. During her time with Defendant, Plaintiff met and, indeed, exceeded the expectations of the surgeons to whom she was assigned.

21. After her employment ended, Dr. Joseph Neimat wrote a letter of recommendation for Plaintiff on Vanderbilt University Medical Center letterhead.

22. Dr. Neimat's letter stated in part: "During our time working together Chris has exceeded all my expectations both in the excellence of the care she provides and in her selfless dedication to the patients and patients and families that she interacts with on a daily basis." Dr. Neimat went on to state, "She has my strongest and most unreserved recommendation."

23. Likewise, Dr. Peter Konrad wrote a letter on Plaintiff's behalf. Dr. Konrad's letter, also on Vanderbilt University Medical Center stationary, stated in part: "She helped us bring a regionally good program to a nationally recognized program within 5 years . . ." Dr. Konrad

4

concluded, "I really feel she will be an enormous asset to whatever practice is fortunate enough to have her."

24. During Plaintiff's tenure with Defendant, she endured a clinical work environment that was significantly and knowingly understaffed. Nevertheless, Plaintiff was instructed she was not to record significant overtime because of budgetary issues.

25. As but one example, on December 21, 2011, Plaintiff and other employees of Defendant received the following email:

> Good afternoon,
>
> After reviewing the budget it has been brought to my attention that LPN/MA salaries are extremely over budget due to overtime. At this time, no one has permission to accumulate overtime. It is the responsibility of each employee to adjust their time accordingly to fall within 40 hours per week. Please let me know if you have any questions or concerns related to this matter.
>
> Thanks,
>
> LaTrease Gibson
> Manager Neurosurgery Clinic

26. Such communications placed Plaintiff in the impossible position of having to work overtime – specifically through her meal breaks -- to complete her job duties, yet being prohibited from recording any overtime.

27. On the occasions Plaintiff did record nominal overtime, she was frequently reprimanded for it.

28. For example, on March 12, 2012, Plaintiff received the following email from Debbie Preston, assistant manager:

> Chris,
>
> You had 5.6 hours of overtime on the last pay period. As mentioned in previous emails,

5

overtime has to be approved in advance and must be kept to a minimum. Since Drs. Neimat and Konrad are both in clinic this week, make sure you adjust your time today and Wednesday in order to avoid overtime this week. Friday needs to be avoided as an adjustment day if at all possible.

Debbie

29. Given the staffing issues and the internal pressures regarding overtime, Plaintiff was put in the position of having to work though her uncompensated meal breaks in order to complete her workload.

30. The staffing issue was appreciated by the physicians for whom Plaintiff worked.

31. For example, on May 29, 2012, she received the following email from Dr. Neimat:

Thanks for your email. I continue to be appalled at the way you were treated by Vanderbilt. **We had been pressing for months/years to get you some help. Its [sic] amazing to me that you were unable to do that. I have no doubt that whoever fills this position will find the same complications and challenges are simply too much for 1 person.**

Pete and I feel very much the same way about working with you. We loved having you as part of the team. You provided something very special to our patients that cannot be replaced. We miss you every day.

Please do keep in touch. Let me know how things work out and if I can send another letter or call someone as a reference, just let me know. Hope to see you soon.

Joseph

(emphasis added)

32. During Plaintiff's employment, she performed work in excess of forty (40) hours per week on a regular and repeated basis.

33. Hourly employees who work more than forty (40) hours per week are entitled to overtime compensation for those hours worked in excess of forty (40). 29 C.F.R. § 778.101.

34. Under the Fair Labor Standards Act, "overtime must be compensated at a rate not less

6

than one and one-half times the regular rate at which the employee is actually employed" during the first forty (40) hours of work. 29 C.F.R. § 778.107.

35. Plaintiff regularly and repeatedly worked "off the clock" during her uncompensated "meal break," thereby allowing Defendant to avoid paying Plaintiff proper overtime compensation for all hours worked overt forty (40).

36. Defendant's intentional failure to pay Plaintiff all of his overtime wages is a willful violation of the FLSA.

37. In addition, Defendant was unjustly enriched because it accepted the fruits of Plaintiff's labor without paying her the compensation which, under the Tennessee Wage Regulation Act, the parties had agreed upon.

## V. CAUSES OF ACTION

38. The forgoing facts are incorporated by reference as if fully stated herein.

39. Plaintiff brings the following claims against Defendant:

   A. Discriminatory termination in violation of the Tennessee Disability Act (TDA);

   B. Willful failure to pay overtime wages in violation of the Fair Labor Standards Act of 1938;

   C. Unjust Enrichment/Quantum Meruit/Breach of Contract; and

   D. Violation of the Tennessee Wage Regulation Act

40. Plaintiff demands a jury for all claims.

## VI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF prays for the following relief:

41. All monetary losses including back pay and benefits, compensation for humiliation and

embarrassment, and front pay or reinstatement under the TDA;

42. A declaratory judgment that Defendant has violated the overtime provisions of the FLSA, 29 U.S.C. § 207 and Tennessee law as to Plaintiff;

43. A declaratory judgment that Defendant's violations of the FLSA were willful;

44. An award to Plaintiff of damages in the amount of unpaid wages to be proven at trial;

45. An award to Plaintiff and of interest and liquidated damages in an amount equal to the overtime compensation shown to be owed to Plaintiff pursuant to 29 U.S.C. § 216(b);

46. An award to Plaintiff of reasonable attorneys fees and costs, pursuant to the TDA and the FLSA, at 29 U.S.C. § 216(b); and

47. An award of such other and further legal and equitable relief as may be appropriate.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

  s/Michael L. Russell
MICHAEL L. RUSSELL (20268)
**Gilbert Russell McWherter PLC**
Chesapeake Business Centre
1616 Westgate Circle, Suite 228
Brentwood, Tennessee  37027
Telephone:  615-467-6372
mrussell@gilbertfirm.com

JUSTIN S. GILBERT (0179)
**Gilbert Russell McWherter PLC**
Republic Centre
633 Chestnut St, Suite 600
Chattanooga, TN 37450
Telephone:  423-499-3044
jgilbert@gilbertfirm.com

8

CLINTON H. SCOTT (23008)
JONATHAN L. BOBBITT (23515)
**Gilbert Russell McWherter PLC**
101 North Highland
Jackson, Tennessee 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
cscott@gilbertfirm.com;
jbobbitt@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*

9